IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YITZCHOK ("Isaac") SHTEIERMAN**,** individually, and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>     -against-<br><br>JP MORGAN CHASE BANK, N.A., CHASE AUTO FINANCE, INC., SUBARU OF AMERICA, INC. d/b/a SUBARU MOTORS FINANCE; DOE COMPANIES 1-10, | Index No.<br><br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

## **CLASS ACTION COMPLAINT**

**COMES NOW** the Plaintiff, Yitzchok ("Isaac") Shteierman, (hereinafter "Plaintiff" or "Mr. Shteierman") by and through his attorney, Scott C. Levenson, Esq., of Levenson Law Group, and brings this action against Defendants JP MORGAN CHASE BANK, N.A., CHASE AUTO FINANCE, INC., SUBARU OF AMERICA, INC. d/b/a SUBARU MOTORS FINANCE, and Doe Companies 1-10;  (collectively, "Defendants").  Upon personal knowledge of the facts pertaining to himself and on upon information and belief as to all other matters, Plaintiff respectfully shows and alleges as follows:

1

## NATURE OF THE CASE

1. Plaintiff brings this class action on behalf of himself, the general public, and Class of all similarly situated consumers against Defendant JPMORGAN CHASE BANK, N.A., CHASE AUTO FINANCE, INC., and SUBARU OF AMERICA, INC. d/b/a SUBARU MOTORS FINANCE, to obtain statutory damages, compensatory damages, punitive damages, restitution and declaratory and/or injunctive relief arising from their routine practices of (1) charging civilly and criminally usurious interest rates; and (2) automatically billing consumers for car lease payment after leases have expired.

2. Defendants charge, collect and receive usurious rates of interest from New York consumers, including Plaintiff, in excess of New York's usury cap.  By so doing, Defendants have violated New York General Obligations Law § 5-501 and New York Banking Law § 14-a and have been unjustly enriched as a result of their unlawful conduct.

3. Defendants use an automated billing process that takes funds from consumer's debit and credit cards and bank accounts, without consumer authorization or permission, and after lease terms have expired.

4. Plaintiff and all others similarly situated, assert the following allegations upon information and belief, except as to Plaintiff's own respective experiences with Defendants, and as to facts that are a matter of public record.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act of 2005, and 28 U.S.C. § 1332(d)(d) and (6) because the aggregate claims of the putative class members exceeds $5 million, exclusive of costs and interest, and at least one member of the proposed class is a citizen of a different state than Chase.

6. Moreover, this Court has jurisdiction because this action is brought as a proposed class action under Fed. R. Civ. P. 23 and the proposed Class includes more than 100 members.

7. Venue is also proper in this judicial District under 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District, Defendants regularly conduct business in this District, and because the events giving rise to the Plaintiff's and Class Members' claims occurred in this judicial District.

## THE PARTIES

### I. Plaintiff

8. Plaintiff Yitzchok ("Isaac") Shteierman, (hereinafter "Mr. Shteierman") is a citizen and resident of Brooklyn, New York.

9. Plaintiff, as a resident of New York, has standing under New York Law, and may also pursue claims in other states, and nationwide, that any class member would have standing to pursue. *Langan v. Johnson & Johnson Consumer Companies,* 897 F.3d 88 (2018) and Defendants may not limit Plaintiff's ability to represent the interests of everyone who was harmed by Defendants' bad conduct. *Id.*

### II. Defendants

10. Defendant JPMorgan Chase Bank, N.A. is a corporation doing business as a financial institution in the State of New York and nationwide.  It operates banking centers and branches across the State of New York and the nation, and thus, it conducts business throughout New York and the United States.

11.  Defendant Chase Auto Finance, Inc. is a corporation doing business in the State of New York, and nationwide.

12. Defendants JP Morgan Chase Bank, N.A. and Chase Auto Finance, Inc. are engaged in the business of providing auto loan and lease financing to Subaru buyers and lessees, including Plaintiff and members of the Class, which include usurious interest payments, as well as automatically charged loan or lease payments, even after such loans or leases have ended.

13. Defendants JP Morgan Chase, N.A. and Chase Auto Finance will be, hereafter referred to collectively as "Chase."

14. Defendant Subaru of America, Inc., d/b/a Subaru Motors Finance, (referred to herein as "Subaru" or "SMF") is incorporated in New Jersey and has its principal place of business and headquarters in Camden, New Jersey

15. Defendant Subaru Motors Finance ("SMF") is the name for the program operated by JP Morgan Chase Bank, N.A. ("Chase") that provides auto financing to Subaru buyers and lessees.

16. Defendant DOE Companies 1-10 are necessary parties that are as yet unnamed and yet to be identified.

17. Defendants JP MORGAN CHASE BANK, N.A., SUBARU OF AMERICA, INC. d/b/a SUBARU MOTORS FINANCE, and Doe Companies 1-10 are referred to collectively herein as "Defendants."

## FACTUAL BACKGROUND

18. Defendants have violated New York law by charging, taking and receiving payments from Plaintiff and members of the Class at interest rates exceeding the state usury limit.

19. Defendants acquire the usurious interest payments from Plaintiff and the Class through their roles as auto dealer, (SMF) and the ultimate lender (Chase) and lessor of car loans and leases procured by SMF.

20. In addition to this, Defendants employ a method of "automated billing" by which they make themselves the illegal beneficiaries of millions of payments from unwitting consumers including Plaintiff and members of the Class.

## I. **Plaintiff's Experience with Defendants**

21. Plaintiff leased a Subaru vehicle through Defendants, beginning in February of 2020, for which he agreed to pay and paid $437.50 per month.

22. The lease term was three years. Plaintiff timely made the payments each month for the entire three years.

23. The payments were automated, which means that Defendants automatically received the payments, and therefore the funds, each month from Plaintiff's debit or credit card.

24. Plaintiff lease ended on March 6, 2023.  Mr. Shteierman made his February 6, 2023 payment via what Defendants refer to as "automatic billing" which is where a company, who has a client's credit or debit card details on file, automatically charges for a service, which the company may or may not provide, via an automatic process charging the client's card on file.

25. The last payment under the lease was automatically billed to Plaintiff's card on February 6, 2023 and the lease ended on March 6, 2023.

26. At the end of the lease, Plaintiff had, under the agreement with Defendants, an option to extend or renew the lease, or to end the lease.

27. Plaintiff chose to end the lease prior to March 6, 2023 and informed Defendant SMF of his decision.

28. On March 6, 2023, Plaintiff saw that an additional $437.50 had been debited from his payment method, even though the lease had ended, and he was no longer in possession of the vehicle he had leased from Defendants..

29. Plaintiff contacted Defendants about this.  During a telephone call with a representative of SMF, Plaintiff was told that he had been charged $437.50 on March 6th due to the fact that billing is "automatic."

30. When Plaintiff asked why the entire amount had been billed, and for what he had been billed, the representative broke down the monthly payment and informed Plaintiff that $125 of the $437.50 was applied as a "service fee" each months.

31. In New York, such "service fees" are included as interest on all loans.  3 N.Y.C.R.R. § 4.3(b), 4.3(e), 4.3(g).  The statute states that with respect to any loan or forbearance, the term "interest," for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly, or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York Law as it existed prior to the enactment of Chapter 349 of the Laws of 1968."  *See* N.Y. Gen. Oblig. Law § 5-501(2).

32. One hundred and twenty-five dollars ($125) is 35% of $437.50.  Thus Defendants had charged Plaintiff for three full years at the criminally usurious rate of 35% for his auto lease.

33. In New York State, charging interest of more than 16% is civil usury.  Charging more than 25% is criminal usury.

34. This is how Plaintiff discovered, and many Class Members will discover, when this Class is certified, that they have been charged usurious interest rates on their auto loans with Defendants.

35. Not only this, but Plaintiff and members of the Class, have also been overcharged by Defendants by way of Defendants' automated billing process.

36. This means that Defendants employ no human being, and that no other oversight is involved when the this process of automated charging goes through.

37. The automated processor has no idea when auto lease or loan terms between Defendants and consumers come to an end.

38. This means that the automatic billing continues with no human or other automated procedure in place to stop it.

39. By this process, Defendants have made themselves the illegal beneficiaries of hundreds of millions of dollars, through illegal automatic payments that are not authorized by unwitting consumers, including Plaintiff and members of the Class.

40. Plaintiff and the members of the Class have been injured and will be injured by Defendants' unauthorized charging practices, as described herein, to the tune of having millions of dollars bilked from their accounts, in violation of the law.

41. This deception is ongoing, continuous and hidden from the public eye and the consumers of Defendants.

## **INTRODUCTION**

### A. **The Auto Finance Industry's Usurious & Criminally Usurious Interest Rates**

42. New York has forbidden the practice of usury for 236 years.

43. Since at least 1787, New York has prohibited lenders from charging excessive interest to debtors.[1]  This ancient and bedrock principle remains a part of New York consumer financial law.

44. At all times relevant to this Complaint, New York has forbidden the collection of interest above 16% per annum. N.Y. Gen. Oblig. Law § 5-501; N.Y. Banking Law § 14-a. Persons and corporations are expressly forbidden from "directly or indirectly, charg[ing], tak[ing] or receiv[ing]" interest above this usury limit.

---

[1] See L 1787, Ch. 13 (barring taking interest above 7%).

45. Interest includes not just items labeled as "interest," but also certain fees. *See* N.Y.C.R.R. § 4.2(b)[2]

46. The State of New York has such a strong interest in protecting consumers from unreasonable interest charges that receiving interest at some levels is a felony.

47. New York Penal Law § 190.40 states that "a person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum, or the equivalent rate for a longer or shorter period."

48. Here, Defendants receive principal and interest payments from Plaintiff and Class members, as defined, *supra,* that are made pursuant to auto finance loans and leases.

49. Defendants have charged, taken and received interest from Plaintiff and Class members at rates in excess of 16%, in violation of New York's longstanding civil usury limits.

50. This Class action lawsuit seeks monetary damages, restitution, and injunctive relief in order to restore wrongfully obtained usurious interest payments, and to prevent Defendants from charging, collective or receiving usurious interest in the future.

**B. The Auto Finance Automatic Billing Racket**

51. Defendant Subaru Motors Finance ("SMF") is the name for the program operated by JP Morgan Chase Bank, N.A. ("Chase") that provides auto financing to Subaru buyers and lessees.

---

[2]  (amounts included as interest may include "all amounts payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the enactment of Chapter 349 of the Law of 1968.)

52. Chase and SMF misleadingly and deceptively misrepresent the above facts in its publicly available marketing materials, and also omits material facts pertaining to this practice including its own account contracts.

53. Chase and SMF consumers have been injured by these unfair, usurious and deceptive trade practices, as described herein, to the tune of having millions of dollars illegally bilked from their bank accounts in violation of their agreements with Chase and SMF.

54. This deception, aimed at the general public, continues to this very day, as will be described herein.

55. At the end of 2019, there were around 116 million auto loans outstanding in the United States, with a total balance of $1.33 trillion.[3]

56. This makes auto lending the second largest consumer credit market in terms of number of loans,[4] the third largest consumer credit market in terms of dollars outstanding,[5] and the largest private consumer credit market.

57. While mortgage and student loans are larger in terms of dollars outstanding, both markets feature substantial governmental involvement as insurers or direct lenders. In contrast, auto lending and leasing is a wholly private market.

---

[3] Quarterly Report on Household Debt and Credit 2019: Q4 Underlying Data, FED. RESERVE BANK OF N.Y. (2020), https://www.newyorkfed.org/microeconomics/hhdc/background.html (click "download data" under "2019 Q4"), [https://perma.cc/FR67-UBAA] (last visited Apr. 8, 2020). This implies an average outstanding auto loan balance of $11,476.

[4] CTR. FOR MICROECONOMIC DATA, FED. RESERVE BANK OF N.Y., QUARTERLY REPORT ON HOUSEHOLD DEBT AND CREDIT 2018: Q4, at 4 (2019), https://www.newyorkfed.org/medialibrary/ interactives/householdcredit/data/pdf/hhdc_2018q4.pdf [https://perma.cc/2V36-38RN]

[5] Id. at 3. "Other" is not counted as an individual market.

58. Auto lending and leasing is the fast growing consumer credit market. From 2011 to 2019, the total balance on auto loans grew by 89% in nominal terms, are more dramatic growth than even student loans[6].

59. Automobile are the only regular major purchase that is financed primarily by the seller. And they are usually for amounts that exceed consumer's credit card limits. So, unless the consumer has a third-party lender lined up in advance, the consumer does not have an alternative financing possibility -- the dealer is the only option[7].

60. This means that, in most circumstances, the car purchase transaction is linked to the car financing transaction.

61. Most auto financing is done through dealerships, with the dealer, in this case, Subaru, as the initial lender of record. The dealer is almost never the ultimate lender, though. In most cases, the dealer assigns the loan or lease to the ultimate lender -- a financial institution such as a bank, credit union, or captive finance company.

62. The assignee is known as an "indirect lender." The dealer, therefore, is brokering or arranging a loan for an indirect lender.

63. Defendant Subaru Motors Finance ("SMF") is the name for the program operated by JP Morgan Chase Bank, N.A. ("Chase") that provides auto financing to Subaru buyers and lessees.

---

[6] See Quarterly Report on Household Debt and Credit 2019: Q4 Underlying Data, supra note 10, at 3. On an inflation-adjusted basis using the Consumer Price Index for All Urban Consumers (CPI-U), the growth rate of auto loans was 62% during this period. Id. In contrast, student loans grew 80% on a nominal basis and an inflation-adjusted growth rate of 54%. Id.; see also CPI Inflation Calculator, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/data/inflation_calculator.htm (last visited Apr. 8 2020)

[7] Dealers also typically refuse to accept credit card payments above a certain amount because of the merchant fees on cards and risk of fraud.

64. Thus, as pertains to this case, SMF is the dealer, and Chase is the ultimate lender and lessor of car loans and leases procured by SMF.

65. The financing terms are always discussed only at the end of a lengthy transactional process, following several hours of negotiations over the vehicle's price, and any add-ons.  In the case of a car loan, a trade-in might also be part of the negotiation.

66. The transactional setting means that consumers are already worn down and more likely to take the financing terms offered because they have limited information about other financing options and high search costs for obtaining such information about, for example, direct auto lending.[8]

67. In light of all of the foregoing, as described herein, Defendants, by building hidden "service fees" into the consumers' monthly payments, are actually charging usurious interest rates, and this fact is unknown to the consumers, including Plaintiff and the members of the Class.

68. Also, Defendants charge consumers "automatically" for auto loans and leases, even after these loans and leases have ended, essentially stealing millions of dollars from consumers, and this fact is unknown to the consumers, including Plaintiff and the members of the Class.

69. For these violations, this Class action lawsuit seeks monetary damages, restitution, and injunctive relief in order to restore wrongfully obtained loan and lease payments, and to prevent Defendants from charging, collective or receiving such payments in the future.

---

[8] See Bronson Argyle et al., Real Effects of Search Frictions in Consumer Credit Markets, FED. DEPOSIT INS. CORP. 28 (Sept. 2017), https://www.fdic.gov/news/conferences/consumersymposium/ 2017/index.html [https://perma.cc/M6BB-D5QY] (demonstrating high search frictions for direct auto lending).

## CLASS ACTION ALLEGATIONS

70. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit on behalf of himself and the following proposed Nationwide Class, defined as follows:

All individuals who were charged usurious interest rates by Defendants on their auto loans or leases; and

All individuals who were billed via Defendants' automated billing processes, for auto lease or loan payments, beyond the end of the auto loan or lease terms, and which billing was not authorized by the individuals.

71. Both proposed Nationwide Classes will be collective referred to as the Class, except where it may be necessary to differentiate them.

72. Plaintiff reserves the right to amend the above definitions or to propose alternative or additional sub-classes in subsequent pleadings and motions for class certification.

73. Excluded from the Class are: (a) Defendants, their subsidiaries and affiliates, their officers, directors, employees, and their affiliate's officers, directors and employees, and any entity in which Defendants have a controlling interest, (b) the legal representatives, heirs, successors or assigns of any such excluded party; (b) the judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entitles who or which timely and properly excluded themselves form the Class.

74. Plaintiff reserves the right to modify or amend the definition of the proposed Class herein, and/or to add a Subclass or Sub-classes if necessary, before this Court determines whether certification is appropriate.

75. The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members.  These questions predominate over

questions that my affect only individual class members because Chase/Subaru has acted on grounds generally applicable to the class members.

76. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging these same claims.

77. **Commonality Questions of Fact and Law**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including:

a. Whether Chase/Subaru improperly charged usurious interest rates in its car loans and leases to consumers;

b. Whether Chase/Subaru improperly automatically billed consumers for auto loan or lease payments beyond the terms of the consumers' loan or lease agreements;

c. Whether such conduct violates and vitiates the lease and loan contracts with consumers;

d. Whether such conduct is deceptive or in bad faith;

e. Whether Plaintiff and other members of the Class have sustained damages as a result of Chase/Subaru's wrongful business practices, as described herein, and the proper measure of such damages;

f. Whether Chase/Subaru's fee disclosures are deceptive and misleading to both its customers and the general public;

g. Whether Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of Class Members;

h. Whether similar or identical statutory and common law violations, business practices, and injuries are involved; and

i. Whether individual questions, if any, pale by comparison, in both quality and quantity to the numerous common questions that dominate this action.

78. **Numerosity**: Federal Rule of Civil Procedure 23(a)(1).  The parties are so numerous that joinder is impracticable.  Plaintiff does not know the exact number of Class Members because such information is in the exclusive control of the Defendants.  Upon information and belief, and subject to class discovery, the Class consists of tens of thousands of members or more who are geographically dispersed throughout the states in which Defendants operate, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Chase/Subaru records.  Chase/Subaru has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.  The information as to the identity of the Class Members can be readily determined from records maintained by the Defendants, such as consumers with auto loan and lease contracts, and through public notification.

79. It is impracticable to bring Class member's individual claims before the Court.  Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that might

80. **Typicality** Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the claims of Class Members because, among other things, Plaintiff and Class Members were injured through the substantially uniform misconduct by the Defendants, as described herein.

Plaintiff is therefore advancing the same claims and legal theories on his own behalf and on behalf of Class Members, and no defense is available to Defendant that is unique to Plaintiff.

81. **Adequacy of Representation -** Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate representative of the Class because he had an auto lease agreement with Defendants and has suffered damages as a result of Chase/Subaru's improper business practices.  In addition:

> a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself, and all others similar situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;
>
> b) Plaintiff's interests do not conflict with the interests of the unnamed Class Members.
>
> c)  Plaintiff and his counsel anticipate no difficulty in the management of this litigation as a class action; and
>
> d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

82. **Superiority --** Federal Rule of Civil Procedure 23(b)(3)**.**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

83. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both final injunctive relief or corresponding declaratory relief with respect to Plaintiff and the class as a whole.

## **DESCRIPTION OF PUBLIC INJUNCTIONS SOUGHT**

84. Plaintiff seeks a public injunction on behalf of himself and the public prohibiting Chase from charging usurious interest rates on auto loans, disguised as fees, as well as from making material omissions and misrepresentations to the public as to the fees and interest it charges on auto loans, and requiring Chase to disclose the nature and amount of fees and rate of interest that it assesses to its auto loan and lease customers.

85. Plaintiff also seeks a public injunction on behalf of himself and the public prohibiting Chase from "automatically" charging monthly auto loan or lease payments beyond the terms of the auto loans or leases.

86. Fees and the rate of interest charged are one of the most important factors that consumers take into account when entering into an auto loan or lease agreement. The public has a right to a transparent marketplace in which lenders such as Chase/Subaru are open and honest about the number, nature and amount of fees they charge, the exact rate of interest they charge and the circumstances under which those fees and that interest can lawfully be assessed.

87. This injunctive relief sought by Plaintiff will protect the public from Chase/Subaru's deceitful marketing and billing practices. It will prevent Chase/Subaru from continuing to distort the marketplace by representing that it is charging a lawful interest rate, when in actuality it is

criminally usurious. It will also prevent Chase from unlawfully and "automatically" billing consumers beyond the terms of their auto loan agreements.

88. Plaintiff seeks to enjoin Chase from misrepresenting and/or omitting material information as to its fee assessment practices in the documents that it makes available to the public.

## CAUSES OF ACTION

### COUNT I: USURY
**(Violations of New York General Obligations Law § 5-501
and N.Y. Bank Law § 14-a on behalf of Plaintiff and Class)**

89. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

90. Defendants have violated and continue to violate N.Y. Gen. Obl. Law § 5-501 and N.Y. Bank. Law § 14-a by charging, taking and receiving interest from Plaintiff and the Class at a rate in excess of the 16% usury limit.

91. Pursuant to N.Y. Gen. Obl. Law §§ 5-501 and 5-513, Plaintiffs and the Class are entitled to a declaration that Defendants cannot collect, take or receive interest at rates above the legal limit.

92. This subterfuge trend of lenders attempting to disguise interest was recognized and disclaimed by courts more than 100 years ago.

93. This subterfuge trend of lenders attempting to disguise interest was recognized and disclaimed by courts more than 100 years ago.  "The shifts and devices of usurers to evade the statutes against usury have taken every shape and form that the wit of man could devise, but none have been allowed to prevail.

94. Courts have been astute at getting at the true intent of the parties and giving effect to the statute." *Quackenbush v. Sayer,* 62 N.Y. 344, 346 (1875).

95. Loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument." *Adar Boys LLC v. GeneSYS ID, Inc.,* 2021 NY Slip Op 05616 (2021).

96. The guiding principal therefore is "the transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it." *De Korwin v. First National Bank of Chicago,* 170 F.Supp. 112, 128 (N.D. Ill. 1958), aff'd, 275 F.2d 755 (7th Cir.), *cert. denied,* 364 U.S. 824, (1960)

97. Thus, the fees, including origination fees, administrative fees and loan guarantees should all be calculated as interest when looking at the Agreement. *See Lugli v. Johnston,* 78 A.D. 3d 1133, 1133-35, 912 N.Y.S.2d 108 (2d Dep't 2010).

98. Plaintiff and the Class are entitled to have any current loans with Defendants invalidated.

99. Plaintiff and the Class are also entitled to disgorgement of all sums paid in excess of the usury limits.

100. As a direct and proximate result of Defendants' violations of the law, as described herein, Plaintiff and the Class have been damaged and will be damaged in an amount to be proven at the trial of this matter.

## COUNT II: BREACH OF CONTRACT
### (On behalf of Plaintiff and the Nationwide Class)

101. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

102. Plaintiff brings this action on behalf of the Nationwide Class against all Defendants.

103. Plaintiff and members of the Class entered into an agreement (hereinafter "Agreement") with Defendants for purposes of leasing an automobile.

104. Plaintiff and members of the Class fulfilled their obligations under the agreements with Defendants by making monthly loan or lease payments to the Defendants.

105. Defendants breached the contract with Plaintiff and members of the Class by charging them usurious or criminally usurious rates of interest on their agreements, disguising them as "fees" thus invalidating the agreements and rendering them void.

106. Defendants have unlawfully retained auto lease and loan payments automatically billed to and paid by Plaintiff and members of the class, beyond the term of their loan and lease agreements, without providing Plaintiff and members of the class anything in return.

107. Plaintiff and members of the Class have suffered monetary damages as a direct and proximate result of Defendants' breaches, through no fault of their own.

108. Under the laws of the State of New York, where Defendants do business, there is an implied covenant of good faith and fair dealing inherent in every contract.  Good faith and fair dealing, in connection with the execution of contracts, and the discharging of performances and other duties, according to their terms, is required by both parties to an Agreement.

109. Subterfuge and evasion, in charging usurious interest rates disguised as "fees" and in overcharging consumers for auto loan payments beyond the lease terms violates the obligation of good faith and fair dealing.

110. Chase/Subaru have breached the covenants of good faith and fair dealing by charging consumers usurious interest rates, and by unlawfully automatically billing them for lease payments beyond the lease terms.

111. Plaintiff and members of the Class have performed all of the obligations imposed upon them by virtue of their lease Agreements.

112. As a direct and proximate result of Defendants' breaches of Agreement, and of the covenant of good faith and fair dealing, Plaintiff and members of the Class have been damaged and will be damaged in an amount to be proven at trial.

### COUNT III: UNFAIR & DECEPTIVE TRADE PRACTICES
**(Violations of NY CPLR §20-700 and NY Gen Business Law §349 )**

113. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

114. At all time relevant to this Claim, Defendants were engaged in commerce and trade in the State of New York.

115. Under CPLR § 20-700, a deceptive trade practice includes "[a]ny falsely disparaging, or misleading oral or written statement . . . or other representation of any kind made in connection with the sale . . . or . . . the offering for sale . . . of consumer goods or services."

116. The acts and omissions of Defendants, as described herein, violate § 20-700 and the prohibitions against this conduct.

117. Chase/Subaru committed fraudulent business acts and practices in violation of CPLR § 20-700 *et. seq.* and New York General Business Law § 349 when they affirmatively and knowingly charged usurious rates of interest on auto loans to consumers; AND when they automatically overcharged consumers monthly payments beyond the terms of the lending agreements.

118. Plaintiff and Class Members relied upon Chase/Subaru's misrepresentations and deception to their detriment.

119. Defendants' acts and omissions, as described herein, were unfair, deceptive, and contrary to public policy and generally recognized standards of business.

120. As a direct and proximate result of Defendants' acts and omissions, as described herein, Plaintiff and the members of the Class have suffered and will continue to suffer substantial harm including actual damages.

**121.** To succeed on a Section 349 claim, a party must allege that the defendant's conduct (i) was consumer-oriented; (ii) was materially deceptive; and (iii) resulted in an injury to the plaintiff. *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP, et al. v. Matthew Bender & Co.* (2021 NY Slip Op 03485 Decided on June 3, 2021).

**122.** As described herein, the deceptive and fraudulent tactics employed by Defendants were consumer-oriented, were materially deceptive and resulted in injury to the Plaintiff and members of the Class.

123. Defendants engaged in substantial aggravating factors of deception, deceptive acts or practices that violated § 20-700 *et. seq.* and New York Business Law § 349.

124. Defendants intentionally and knowingly misrepresented material facts regarding the hotel room stays with intent to mislead Plaintiff and the Class.

125. Defendants' intentional omissions and misrepresentations are substantial aggravating factors of Plaintiff's and Class Members' injuries.

126. Defendants knew or should have know that their conduct violated New York CPLR § 20-700 *et seq.* and New York Business Law § 349.

127. Defendants' unfair and deceptive trade practices were likely to and did in fact deceive reasonable customers, including Plaintiff about the true nature of the auto loans and leases.

**128.** Plaintiff and the Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the Class members would not have opted to enter into auto loan or lease agreements with Defendants had Defendants disclosed the true nature of their practices.

**129.** As a direct and proximate result of the foregoing acts and omissions by Defendants Plaintiff and members of the Class have been damaged and will be damaged in an amount that exceeds $100 million, including, but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorney's fees, as well as any other just and proper relief available under § 20-700 and § 349.

<u>**COUNT IV: UNJUST ENRICHMENT**</u>
**(On behalf of Plaintiff and the Nationwide Class)**
**(Pleading in the Alternative)**

130. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

131. Plaintiff brings this action on behalf of himself and the Nationwide Class against all Defendants.

132. Defendants have received a benefit at the expense of Plaintiff and members of the Class to which Defendants are not entitled.

133. Plaintiff and members of the class paid usurious rates of interest on auto loans and made payments for services they never received.

134. Defendants have received and retained unjust benefits from the Plaintiff and Class

Members in the form of usurious fees and interest rates, in violation of New York law, and have overcharged Plaintiff and Class Members for services they never received, making Defendants' retention of such fees, interest and over-payments unjust.

135. It is inequitable and unconscionable for Defendants to retain these benefits.

136. Defendants knowingly accepted the unjust benefits as a result of their materially and intentionally deceptive conduct as described herein.

137. Chase/Subaru should be required to disgorge its unjust profits in order to make restitution to Plaintiff and Class Members.

138. In addition, Chase/Subaru continue to deceive the general public.  Defendants' misrepresentations, acts and omissions in its publicly available documents and marketing materials will continue to deceive the general public making corresponding public injunctive relief necessary.

139. As a result of Defendants' conduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and members of the class, in an amount to be proven at trial.

## COUNT V: FRAUD
### (On behalf of Plaintiff and the Nationwide Class)

140. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

141. Under New York Law, to establish fraud a Plaintiff must prove five elements by clear and convincing evidence:  (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the Plaintiff; and (5) resulting damage to the Plaintiff.  *See Crigger v. Fahenstock & Co., Inc.* 443 F.3d 230, 234 (2d Cir. 2006).

142. Defendants fraudulently induced Plaintiff and members of the Class, to do business with them, by fraudulently inducing them to believe that they were paying non-usurious rates of interest on their auto loans and leases.

143. Defendants' acts and omissions, as described herein, constitute common law fraud and they are liable for the damages their fraudulent conduct has cost the Plaintiff and members of the Class.

144. As a direct and proximate result of the foregoing, Plaintiff and the members of the Class have been damaged and will be damaged in an amount exceeding $100 million.

<u>COUNT VII: PUNITIVE DAMAGES</u>
**(On Behalf of Plaintiff and the Nationwide Class Members)**

145. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

146. Under New York law, a party who has been subjected to "conduct . . . so outrageous in character, and so extreme in damages, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" is entitled to prove a claim for intentional infliction of emotional distress." *Murphy v. Am. Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983).

147. To recover damages for intentional infliction of emotional distress, a plaintiff must establish four distinct elements, including (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (3) severe emotional distress; and (4) a causal connection between the conduct and a cognizable injury. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

148. Defendants acts and omissions, as described herein were and are extreme and outrageous and either designed to, or in complete and utter disregard of the probability of causing severe emotional distress in Plaintiff and Class members.  As established herein, Plaintiff and Class members have suffered severe emotional stress and distress and damages resulting from the acts and omissions of Defendants.

149. An award of punitive damages is intended to advance the important state interests of deterrence and retribution.  *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003). The factors to be considered when awarding punitive damages include: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases.  *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir. 1996).

150. Punitive damages, or exemplary damages, are damages assessed to punish the Defendants for outrageous conduct similar to that which formed the basis of the lawsuit.

151. Plaintiff and all Class Members are entitled to actual and punitive damages based on the outrageous, intentional, willful and wanton acts of the Defendants, as described in this Complaint.

### COUNT VIII: ATTORNEYS' FEES
**(Payment of Attorneys Fees By All Defendants)**

152. Plaintiff repeats, re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

153. The acts and omissions by all of the Defendants as set forth herein were willful and wanton and they harmed Plaintiff and all Class Members.

154. As a result of all Defendants' acts and omissions, as described herein, Plaintiff and the Class members were forced to initiate this proceeding.

25

155. Plaintiff and the Class members therefore have a right to attorneys' fees and costs for having to initiate and litigate this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for the following;

1. An Order certifying this action as a Class Action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

2. An Order requiring Defendants to pay the costs involved in notifying Class Members about the judgment an administering the claims process;

3. An Order awarding Plaintiff and Class Members all compensatory and other damages for the unlawful conduct of Defendants, as set forth herein;

4. Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

5. Special damages according to proof;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants to prevent future wrongful conduct;

8. Prejudgment interest at the maximum legal rate;

9. Cost of the proceedings herein;

10. Reasonable attorneys fees; and

11. All such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

claims in this Class Action Complaint so triable.

Dated: June 15, 2023
     New York, New York

                        **LEVENSON LAW GROUP**

                    By: __/s/Scott Levenson__
                    Scott Levenson, Esq.
                    625 West 51st Street
                    New York, New York 10019
                    (347) 352-2470
                    LevensonLawGroup.com
                    ***Counsel for Plaintiff***
                    ***and the Proposed Class***